IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JANA MEKHHAL, | : |
| Plaintiff, | : |
| v. | : CIVIL ACTION NO. |
| AKZO NOBEL COATINGS INC., | : |
| Defendant. | : JURY TRIAL DEMANDED |

COMPLAINT

Plaintiff, Jana Mekhhal ("Plaintiff"), by and through her counsel, files this Complaint and asserts claims of age discrimination against Defendant, Akzo Nobel Coatings Inc. ("Akzo Nobel").

INTRODUCTION

Akzo Nobel, a supplier of paints and coatings, is the U.S.-based subsidiary of a global conglomerate headquartered in Europe. The Company employs thousands of people in the United States, and operates both laboratory and manufacturing facilities in Pennsylvania. In December 2023, Akzo Nobel's U.S.-based Human Resources professionals turned a blind eye to a European manager's decision to fire Jana Mekhhal, a high performing Lab Manager based in Reading, Pennsylvania, because of her age (64). Dr. Mekhhal brings this lawsuit to seek compensation for the damages caused by Akzo Nobel's discriminatory decision, and to hold the Company accountable for its willful violation of U.S. law.

1

## JURISDICTION AND VENUE

1. This action for discrimination is authorized and instituted pursuant to the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621, et. seq. ("ADEA"), and the Pennsylvania Human Relations Act, 43 P.S. § 951, et seq. ("PHRA").

2. This Court has original jurisdiction pursuant to 28 U.S.C. § 1331.

3. Pursuant to 29 U.S.C. § 1367, this Court has supplemental jurisdiction with respect to Plaintiff's claim under the PHRA.

4. This case is not subject to compulsory arbitration because Plaintiff seeks injunctive relief and the amount in controversy exceeds the jurisdictional amount for arbitration of One Hundred Fifty Thousand Dollars ($150,000), exclusive of interest and costs.

5. Plaintiff filed an administrative complaint of discrimination with the Pennsylvania Human Relations Commission ("PHRC") on February 26, 2024, which was cross filed with the Equal Employment Opportunity Commission ("EEOC").

6. The EEOC issued a Dismissal and Notice of Rights on December 5, 2025. As a result, Plaintiff has adequately exhausted her administrative remedies.

7. Venue is properly invoked pursuant to 29 U.S.C. § 1391(b) because the actions complained of herein occurred within the jurisdictional limit of this Court.

## PARTIES

8. Plaintiff, Jana Mekhhal, is an adult female whose date of birth is July 1, 1959.

9. Akzo Nobel is the U.S. subsidiary of a global conglomerate based in the Netherlands that manufactures paints and coatings.

10. Akzo Nobel's United States headquarters is located at 535 Marriott Drive, Suite 500, Nashville, Tennessee 37214.

11. Akzo Nobel employes approximately 2000 employees in the United States.

12. Akzo Nobel operates multiple locations in Pennsylvania, including two locations in Berks County: Flying Hills, 3 Commerce Drive, Reading, PA 19607; and 150 Columbia Street, Reading, PA 19610.

13. At all times relevant to this Complaint, Plaintiff worked for Akzo Nobel out of its Pennsylvania locations.

14. At all times relevant to this Complaint, Akzo Nobel was Plaintiff's employer within the meaning of the ADEA and the PHRA.

15. Defendant's discriminatory actions as described herein took place within Pennsylvania.

16. At all times relevant to this Complaint, Akzo Nobel acted by and through their authorized agents and/or employees within the course and scope of their employment.

FACTUAL ALLEGATIONS

Akzo Nobel's U.S. Human Resources Policies and Function

17. Akzo Nobel, in compliance with the law in the United States and Pennsylvania, adopted policies prohibiting discrimination against its employees based on protected characteristics, including but not limited to gender, race, religion, and age.

18. Akzo Nobel's Human Resources leadership team in the United States works out of the Company's U.S. headquarters in Nashville, Tennessee.

19. Deborah Hotard, Human Resources Manager, had responsibility for Human Resources compliance issues for the U.S. Commercial business, and was based in Nashville.

20. Ronald Tomko, Human Resources Business Partner, had local responsibility for Human Resources compliance issues at Akzo Nobel's Pennsylvania locations.

21. Akzo Nobel's Human Resources representatives had responsibility, in conjunction with U.S.-based Company management, for the Company's compliance with U.S. anti-discrimination laws.

Plaintiff's Educational and Employment History

22. Born in Slovakia, Dr. Mekhhal holds a Ph.D. in Chemical Engineering, Technology of Oil Refining and Chemical Synthesis from the State Academy of Oil and Gas in Moscow, Russia.

23. Dr. Mekhhal relocated to the United States in 1993, and she became a U.S. citizen in 2004.

24. Since relocating to the United States, Dr. Mekhhal's career has progressed through positions of increasing responsibility for high performing companies, including Dupont and Axalta.

25. Throughout her career, Dr. Mekhhal has demonstrated a strong work ethic, the ability to adapt to changing circumstances and expectations, and a passion for the well-being of her team.

26. Effective October 2020, Akzo Nobel hired Dr. Mekhhal as the Development & Solutions Lab Manager Americas at its location in Flying Hills, Pennsylvania. In that role, Dr. Mekhhal had responsibility to manage Akzo Nobel's regional solutions and development labs to fine tune existing products and develop new products consistent with the agenda for the Powder Coatings business unit.

27. By the time she joined Akzo Nobel in October 2020, Dr. Mekhhal had extensive experience leading strategic and technology development projects.

Plaintiff's Employment at Akzo Nobel

28. Frank Vergeer, Technical Director, Powder Coatings, who was based in Amsterdam, had supervisory responsibility for Dr. Mekhhal throughout her employment at Akzo Nobel.

29. Mr. Vergeer's feedback to Ms. Mekhhal about her performance at Akzo Nobel was always positive.

30. Dr. Mekhhal met or exceeded all performance expectations as Development & Solutions Lab Manager during her employment at Akzo Nobel, and she was both respected and well-liked by her colleagues.

31. In or about August 2022, during an in person visit to Pennsylvania, Mr. Vergeer asked Dr. Mekhhal how long she planned to stay working at Akzo Nobel. Dr. Mekhhal indicated that she wanted to stay as long as she could, and at least to her full retirement date (that is, at age 67 and 10 months, which would be April 2027). At the time, Mr. Vergeer did not seem to have any issues with Dr. Mekhhal's plans.

32. In or about July 2023, Sweccha Joshi, an R&D Program Manager who worked closely with Mr. Vergeer in Amsterdam, visited the Akzo Nobel locations in Pennsylvania.

33. During her visit, Ms. Joshi asked Dr. Mekhhal directly when she was planning to retire. Dr. Mekhhal was surprised and caught off guard, but responded that she had no specific plans to retire and expected to work at least until her normal retirement date.

34. Ms. Joshi is substantially younger than Ms. Mekhhal.

35. A couple of months later, in or about September 2023, Ms. Mekhhal traveled to Amsterdam for in person meetings with her team that included succession planning discussions. As part of those conversations, Dr. Mekhhal presented the succession plan for her organization.

36. Ms. Joshi objected to Dr. Mekhhal's proposed succession plan because she had not been identified as one of Dr. Mekhhal's successors.

37. Even though she did not believe Ms. Joshi was an appropriate successor for her role, Dr. Mekhhal had to update her proposed succession plan to add her.

38. In October 2023, Mr. Vergeer held his regular virtual monthly check-in meeting with Dr. Mekhhal. At that time, Mr. Vergeer did not identify any deficiencies in Dr. Mekhhal's performance, any areas for improvement, or any changes in Akzo Nobel's operations in Pennsylvania.

39. Similarly, in November 2023, Mr. Vergeer held his regular virtual monthly check-in meeting with Dr. Mekhhal. At that time, Mr. Vergeer did not identify any deficiencies in Dr. Mekhhal's performance, any areas for improvement, or any changes in Akzo Nobel's operations in Pennsylvania.

<u>Akzo Nobel's Discriminatory Termination Plaintiff's Employment At Age 64</u>

40. On December 13, 2023, when Dr. Mekhhal joined her regularly scheduled virtual monthly check-in meeting with Mr. Vergeer, Ms. Hotard, the Human Resources Manager, was also on the call.

41. During the virtual meeting on December 13, 2023, Mr. Vergeer praised the performance of Dr. Mekhhal's team, but notified her that her employment was being terminated purportedly because she did not have the "leadership and continuous improvement skills" needed for the Company's next industry transformation.

42. Mr. Vergeer made it clear that he did not intend to eliminate the position of Development & Solutions Lab Manager Americas, and that he was planning to replace Dr. Mekhhal.

43. Upon information and belief, at the time Akzo Nobel terminated Dr. Mekhhal's employment, there were no anticipated "industry transformations" that Dr. Mekhhal was not qualified to handle.

44. Instead, Akzo Nobel's claim that Dr. Mekhhal did not have sufficient "leadership and continuous improvement skills" to remain in her job was demonstrably false, and just a pretext for age discrimination.

45. At that time, upon information and belief, the Company planned to replace Dr. Mekhhal with Ms. Joshi, or another similar much younger worker.

46. Upon information and belief, at the time she facilitated Dr. Mekhhal's illegal firing, Ms. Hotard simply accepted Mr. Vergeer's stated rationale for the termination without evaluating whether it had any basis in fact and/or complied with U.S. anti-discrimination laws.

47. Following the notification of her employment termination, Dr. Mekhhal met with Mr. Tomko, the Company's local Human Resources Manager based in Pennsylvania, to turn over her Company equipment.

48. At the time, Mr. Tomko told Dr. Mekhhal that he had not been aware of the termination decision previously, but had been asked to be on site to make sure everything was under control.

49. As with Ms. Hotard, Mr. Tomko assisted in implementing Dr. Mekhhal's termination of employment without evaluating the legitimacy of the purported business reasons for doing so and/or its compliance with U.S. anti-discrimination laws.

50. Shortly after notifying Dr. Mekhhal of her firing, Mr. Vergeer held a virtual meeting with Dr. Mekhhal's team during which he advised them that she was "no longer with the

company as of today," and gave no other explanation, which raised an inference that she had been fired for misconduct.

51. Akzo Nobel, acting through its managerial employees, including but not limited to Mr. Vergeer, Ms. Hotard, and Mr. Tomko, implemented its termination of Dr. Mekhhal's employment with the knowledge or with reckless disregard as to whether the termination violated U.S. anti-discrimination laws.

52. Upon information and belief, many of Ms. Mekhhal's subordinates expressed surprise and upset upon receiving notice that their beloved supervisor had been fired.

53. On the same day she participated in the virtual meeting during which Akzo Nobel notified Dr. Mekhhal of the termination of her employment, Ms. Hotard offered Dr. Mekhhal severance pay and benefits in exchange for her agreement to sign a release of all legal claims against the Company arising from her termination, including any claims pursuant to the ADEA and the PHRA.

54. Dr. Mekhhal did not sign the proposed release of legal claims.

55. Akzo Nobel's illegal termination of Dr. Mekhhal's employment became effective on December 31, 2023.

56. As noted above, Dr. Mekhhal filed an administrative complaint of age discrimination with the PHRC on February 26, 2024, in which she alleged that Akzo Nobel's decision to terminate her employment was motivated by age discrimination. At the time, Akzo Nobel had not yet announced her replacement and/or posted her prior position.

57. On February 28, 2024, Akzo Nobel posted Dr. Mekhhal's prior position of Development & Solutions Lab Manager, North America, Powder Coatings, but the new posting suggested that the Company sought candidates who were younger and less experienced than Dr.

Mekhhal. Specifically, the new job posting eliminated the requirement for candidates to have technical experience with powder coatings, and reduced the total years of experience from ten plus (10+) years to only five (5) years.

58. Akzo Nobel filed an Answer to Dr. Mekhhal's PHRC Complaint on April 19, 2024. In that Answer, the Company denied that Dr. Mekhhal's performance feedback had always been positive, yet it did not produce <u>any</u> documentation to suggest otherwise.

59. Upon information and belief, Akzo Nobel reconsidered offering the Development & Solutions Lab Manager position to Ms. Joshi because of concerns about its liability in this case.

60. Instead, upon information and belief, in or about May 2024, Akzo Nobel offered the Lab Manager position to Onur Cakmak, an Akzo Nobel manager who was based in Germany, and who was substantially younger than Dr. Mekhhal.

61. Upon information and belief, Mr. Cakmak declined the job offer because he did not want to relocate his family out of Europe at that time.

62. On July 14, 2024, Akzo Nobel hired Hong Li, Ph.D., to replace Dr. Mekhhal in a position that was significantly more narrow in scope that the position Dr. Mekhhal held during her employment.

63. Upon information and belief, Dr. Li is decades younger than Dr. Mekhhal, and was significantly less qualified and less experienced than Dr. Mekhhal at the time of his hire.

64. Upon information and belief, since the time of Dr. Mekhhal's termination in December 2023, Akzo Nobel has not made any changes in the operations of the Development & Solutions Lab that Dr. Mekhhal could not have implemented effectively.

65. At the time of her illegal termination, Dr. Mekhhal had been planning to work several more years, and to continue contributing her expertise and leadership to Akzo Nobel's lab operations in Pennsylvania just as she had since 2020.

66. As a result of Akzo Nobel's discriminatory termination of her employment due to her age, Dr. Mekhhal has suffered, and continues to suffer, a loss of earnings and/or earning capacity.

67. As a result of Akzo Nobel's discriminatory termination of her employment due to her age, Dr. Mekhhal has suffered, and continues to suffer, humiliation, emotional distress, mental anguish, and harm to her professional reputation.

## COUNT I

### Age Discrimination in violation of Age Discrimination in Employment Act of 1967

68. Plaintiff hereby incorporates by reference the foregoing paragraphs as though fully set forth herein.

69. Defendant violated the ADEA when it terminated Plaintiff's employment because of her age.

70. Defendant's violation of the ADEA was willful under the circumstances, warranting the imposition of liquidated damages.

## COUNT II

### Age Discrimination in violation of Pennsylvania Human Relations Act

71. Plaintiff hereby incorporates by reference the foregoing paragraphs as though fully set forth herein.

72. Defendant violated the PHRA when it terminated Plaintiff's employment because of her age.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, Jana Mekhhal, respectfully requests that this Court enter judgment in favor of Plaintiff and against Defendant as follows:

A. Declare the acts and practices complained of herein to be a violation of the Age Discrimination in Employment Act;

B. Declare the acts and practices complained of herein to be a violation of the Pennsylvania Human Relations Act;

C. Enter an order requiring Defendant to cease and desist their discriminatory actions;

D. Award to Plaintiff damages for all past and future economic losses she has suffered and will continue to suffer as a result of Defendant's discrimination, including but not limited to her loss of salary, bonuses, and health benefits;

E. Award to Plaintiff liquidated damages for Defendant's willful and/or reckless disregard for her legal rights;

F. Award to Plaintiff compensatory damages for all past and future non-economic harms she has suffered and will continue to suffer as a result of Defendant's discrimination including, but not limited to, humiliation, emotional distress, mental anguish, and harm to her professional reputation;

G. Award to Plaintiff all costs, disbursements, and reasonable attorneys' fees relating to the enforcement of her rights;

H.      Award to Plaintiff pre-and post-judgment interest as well as the sum necessary to make up for any adverse tax consequences incurred by her as result of any judgment entered in this matter; and

I.      Grant to Plaintiff such additional relief as the Court deems just and proper under the circumstances.

<u>JURY TRIAL DEMANDED</u>

Plaintiff hereby requests a jury trial on each of the Counts in this Complaint.

UEBLER LAW LLC

<u>/s/Julie A. Uebler</u>
Julie A. Uebler, Esquire (ID No. 71297)
101 Lindenwood Drive, Suite 225
Malvern, PA 19355
(484) 875-3186 (Voice)
(484) 875-9273 (Fax)
uebler@ueblerlaw.com

Attorney for Plaintiff
Jana Mekhhal